## UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**CHRIS HILL #412612**                                    **CIVIL ACTION**

**versus**                                                        **NO. 04-2588**

**LYNN COOPER, WARDEN**                              **SECTION: "S" (3)**

## REPORT AND RECOMMENDATION

       This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Chris Hill, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana.  On May 20, 1999, he was convicted of manslaughter in violation of La.Rev.Stat.Ann § 14:31.[2]  On September 20, 1999, he sentenced to a term of twenty-five years imprisonment, with credit for time served.[3]  On February 14, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed an application for rehearing.[5]  On March 21, 2001, the intermediate appellate court granted that application but again affirmed his conviction and sentence.[6]  He next filed with the Louisiana Supreme Court related writ applications which were denied on March 15, 2002.[7]

On or about August 20, 2002, petitioner filed with the state district court an application for post-conviction relief.[8]  That application was denied on October 16, 2002.[9]  He next

---

[2] State Rec., Vol. II of VIII, transcript of May 19-20, 1999, p. 225; State Rec., Vol. I of VIII, minute entry dated May 20, 1999.

[3] State Rec., Vol. II of VIII, transcript of September 20, 1999, pp. 10-11; State Rec., Vol. I of VIII, minute entry dated September 20, 1999.

[4] State v. Hill, No. 2000-KA-0664 (La. App. 4th Cir. Feb. 14, 2001) (unpublished); State Rec., Vol. III of VIII.

[5] State Rec., Vol. II of VIII.

[6] State v. Hill, No. 2000-KA-0664 (La. App. 4th Cir. March 21, 2001) (unpublished); State Rec., Vol. III of VIII.

[7] State v. Hill, 811 So.2d 898 (La. 2002) (No. 2001-KO-1257); State ex rel. Hill v. State, 811 So.2d 906 (La. 2002) (No. 2001-KH-1980); State Rec., Vol. III of VIII.

[8] State Rec., Vol. IV of VIII.  Petitioner signed that application on August 20, 2002.

[9] State Rec., Vol. III of VIII, Judgment dated October 16, 2002.

filed with the Louisiana Fourth Circuit Court of Appeal a related writ application[10] which was denied on December 20, 2002.[11]

On or about January 13, 2003, petitioner filed with the state district court another application for post-conviction relief.[12] When the court apparently failed to rule on that application,[13] he filed with the Louisiana Fourth Circuit Court of Appeal a writ application[14] which was denied on June 27, 2003.[15] He then filed with the Louisiana Supreme Court a related writ application[16] which was denied August 20, 2004.[17]

On September 8, 2004, petitioner filed this federal application for *habeas corpus* relief.[18] In support of his application, petitioner claims:

1. The trial court violated petitioner's rights by refusing to allow him to testify at trial;

---

[10] State Rec., Vol. VII of VIII.

[11] State v. Hill, No. 2002-K-2258 (La. App. 4th Cir. Dec. 20, 2002) (unpublished); State Rec., Vol. III of VIII.

[12] State Rec., Vol. V of VIII.

[13] See *supra* note 25.

[14] State Rec., Vol. VIII of VIII.

[15] State v. Hill, No. 2003-K-1125 (La. App. 4th Cir. June 27, 2003) (unpublished); State Rec., Vol. III of VIII.

[16] State Rec., Vol. III of VIII.

[17] State *ex rel.* Hill v. State, 882 So.2d 569 (La. 2004) (No. 2003-KH-2184); State Rec., Vol. III of VIII.

[18] Rec. Doc. 2.

2.      The trial court erred in denying petitioner's motion for a new

trial;

3.      The trial court erred in denying petitioner's motion to

suppress evidence and his statement;

4.      The trial court erred in refusing to allow the victim's rap

sheet to be admitted into evidence;

5.      The trial court denied petitioner a fair trial and erred in

denying his motion for a mistrial;

6.      Petitioner's trial was unfair due to the cumulation of errors;

7.      Petitioner received ineffective assistance of counsel; and

8.      There was insufficient evidence to support petitioner's

conviction.

In its initial response in the matter, the state conceded that petitioner exhausted his claims in state court but argued that the application should be dismissed as untimely filed.[19]  After reviewing that response and the record, the Court ordered the state to file a supplemental response addressing the merits of petitioner's claims.[20]  In its supplemental response, the state argued that petitioner's claims were either procedurally barred or had no merit.[21]

---

[19]  Rec. Doc. 6.

[20]  Rec. Docs. 8 and 9.

[21]  Rec. Doc. 12.

<u>Timeliness</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") generally requires that a petitioner bring his Section 2254 claims within one (1) year of the date on which his conviction or sentence becomes "final."[22]  Under the AEDPA, a judgment is considered "final" upon the expiration of time for seeking direct review.  28 U.S.C. § 2244(d)(1)(A).

As noted, on March 15, 2002, the Louisiana Supreme Court denied petitioner's writ applications challenging the state intermediate appellate court's judgment affirming his conviction and sentence.  For AEDPA purposes, his conviction became "final" ninety (90) days later when his period expired for seeking a writ of certiorari from the United States Supreme Court.  <u>See</u> <u>Roberts v. Cockrell</u>, 319 F.3d 690, 694 (5th Cir. 2003); <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999); <u>Chester v. Cain</u>, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); <u>see also</u> U.S. Sup. Ct. R. 13(1).  Accordingly, petitioner's one-year period for seeking federal *habeas corpus* relief commenced on June 13, 2002, and expired on June 13, 2003, unless that deadline was extended through tolling.[23]

---

[22]   Although § 2244(d)(1) has alternative provisions providing for other events which can trigger the commencement of the statute of limitations, those alternative provisions are inapplicable in the instant case.

[23]   The Court notes that the state contends that petitioner's conviction became final much earlier, because his writ application with the Louisiana Supreme Court was untimely filed.  For the following reasons, this Court rejects that contention.

As noted, on March 21, 2001, Louisiana Fourth Circuit Court of Appeal granted petitioner's application for rehearing but again affirmed his conviction and sentence.  <u>State v. Hill</u>, No. 2000-KA-0664 (La. App. 4th Cir. March 21, 2001) (unpublished); State Rec., Vol. III of VIII.  Petitioner then had thirty days from that date to file a writ application with the Louisiana Supreme Court.  Louisiana Supreme Court Rule X, § 5(a).  On or about April 18, 2001, petitioner filed with the Louisiana Supreme Court an application for an extension of time to file his writ application.  State

The Court first looks to statutory tolling.  The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court.  28 U.S.C. § 2244(d)(2).

Sixty-seven (67) days of petitioner's one-year statute of limitations elapsed prior to being tolled by the filing of his post-conviction application on August 20, 2002.  Although that application was denied, tolling continued uninterrupted during the period of appellate review, so long as petitioner sought such review in a timely manner.  See Grillette v. Warden, Winn Correctional Center, 372 F.3d 765, 769-70 (5th Cir. 2004).  The state concedes that petitioner timely filed with the Louisiana Fourth Circuit Court of Appeal a related writ application[24] which was denied on December 20, 2002.  Therefore, tolling continued until January 19, 2003, when his time expired for filing a writ application with the Louisiana Supreme Court.  Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001).

---

Rec., Vol. III of VIII.  The state correctly notes that the rules of the Louisiana Supreme Court provide that no such extensions will be granted.  Louisiana Supreme Court Rule X, § 5(a).  Nevertheless, petitioner has provided evidence showing that on May 2, 2001, the Louisiana Supreme Court's Central Staff notified petitioner in writing that he was granted a sixty-day extension to file his application. Rec. Doc. 7.  In an envelope postmarked May 30, 2001, see Rec. Doc. 7, well before the expiration of that extended deadline, petitioner mailed his writ application to the Louisiana Supreme Court.  State Rec., Vol. III of VIII; see Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006) (federal courts must apply the "mailbox rule" to Louisiana state court filings).  In that the Louisiana Supreme Court itself notified petitioner that an extension was granted, petitioner met the extended deadline, and there is no indication that his writ application was dismissed by that court as untimely, this Court has no basis for finding petitioner's Louisiana Supreme Court writ application to be untimely filed.

[24]  Rec. Doc. 6, p. 7.

However, before that period of tolling expired, petitioner again tolled the statute of limitations by filing with the state district court another application for post-conviction relief on or about January 13, 2003.  When the court apparently failed to rule on that application,[25] he filed with the Louisiana Fourth Circuit Court of Appeal a writ application which was denied on June 27, 2003.  He then timely filed with the Louisiana Supreme Court a writ application which was denied August 20, 2004.

When the statute of limitations resumed running at that point, petitioner had two hundred ninety-eight (298) days of his one-year period remaining.  Because his federal application was filed on September 8, 2004,[26] a mere nineteen days later, it was timely filed.  In light of that fact,

_____

[25]   The state contends that in a minute entry dated January 28, 2003, the state district court noted that it had denied petitioner's post-conviction application on October 19, 2002.  Rec. Doc. 6, p. 8.  That is not entirely accurate.  By minute entry dated January 23, 2003, the state district court cryptically noted that it had denied petitioner's post-conviction application on October 16, 2002.  State Rec., Vol. IV of VIII, minute entry dated January 23, 2003.  It is unclear what effect, if any, that minute entry was meant to have.  Even if the court was implying that it was therefore denying petitioner's second post-conviction application based on the fact that it had previously denied his first post-conviction application, an implication that is by no means certain, the court failed to *expressly* rule on that second application.  Moreover, there is no evidence that petitioner was ever informed of that minute entry, and his related writ application in case No. 2003-K-1125 indicates that he was obviously unaware of any such denial.  State Rec., Vol. VIII of VIII.  Therefore, even if the January 23 minute entry were considered a denial of the second post-conviction application, thereby triggering a thirty-day period for filing a writ application with the Louisiana Fourth Circuit Court of Appeal, this Court would grant petitioner equitable tolling from the expiration of that period until the date he filed the writ application in case No. 2003-K-1125, based on the fact that he was never given notice of the "denial."  See Phillips v. Donnelly, 216 F.3d 508, 511 (5th Cir.), *modified on partial reh'g on other grounds*, 223 F.3d 797 (5th Cir. 2000).

[26]   Petitioner signed his federal *habeas corpus* application on September 8, 2004.  Rec. Doc. 2.  That date represents the earliest date that petitioner could have presented his application to prison officials for mailing and, therefore, the earliest date that this Court could deem his *habeas* petition to have been filed for statute of limitations purposes.  Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003).

as well as the fact that the state concedes that petitioner exhausted his remedies in state court,[27] the Court will address the claims petitioner asserts in his federal application.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we

---

[27] Rec. Doc. 6, p. 9.

stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

<u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002) (citations omitted).

Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Deborah White, the victim's sister, testified at trial that her brother, Willie White, was killed on July 5, 1998, in her kitchen at 3026 Alvar Street. She heard the bullets but did not see the shooting. She said her brother did not have a gun in the apartment that night. She admitted, however, that she knew he had a gun in the past, and she knew he used drugs.
>
> Dr. Alvaro Hunt, an expert in forensic pathology, testified that he performed the autopsy on Willie White and found that White suffered five gunshot wounds. All were on the left side of his body. The fatal bullet wound was to his chest cavity; it pierced both his lungs, his heart, and his liver. Another bullet produced a large tear in his liver, and he had three bullet wounds to his left arm. Dr. Hunt opined that the gun was at least two feet from the victim. Tests showed the presence of both alcohol and cocaine in White's system.
>
> Officer Nathan McGhee testified that on July 4, 1998, he investigated a burglary of the apartment of Rose Hill and her son, Chris Hill, at 3106 Alvar Street, Apartment A. The burglar entered through a wall in an adjacent abandoned apartment. Mrs. Hill reported a VCR and jewelry stolen. Later Chris Hill reported that a Daewoo 9 millimeter handgun, a gold ring, and a gold chain were missing.
>
> Officer Edward Prater testified that when he investigated the shooting of Willie White, he noticed bullet holes in the kitchen door. The officer spoke with Don Juan White, a nephew of the victim, who was in the kitchen when the shooting occurred. Don Juan White gave the officer the name "Jeff" as a suspect. Three spent bullets and four spent casings were retrieved from the apartment. Expert testimony established that all the bullets were fired from the same 9 millimeter weapon; additionally all the cartridge cases were fired from the same 9 millimeter weapon.

Don Juan White, the sixteen-year-old nephew of the victim, testified that about 1 a.m. on July 5th he was sitting at the kitchen table with his uncle when someone knocked at the door. Willie White asked who was there, and Don heard someone answer "Jeff" or "Jacob." White opened the door and asked, "Who you want?," and the answer was "We want Willie." White responded, "I don't know you," and tried to close the door. Don saw only a person's leg in the doorway, but he got up and ran from the room during the exchange because he suspected that something was going to happen. While he was running down the hall, he heard gunshots. Don hid in his grandmother's room, and Willie White followed him into the room seconds later, collapsing on the floor. Under cross-examination, Don was asked if he gave the investigating officer the name of the man at the door as "Jeff" or "Jeffery," and Don could not remember.

Michael White, the twelve-year-old cousin of Don Juan White, testified that before midnight on July 4th he was shooting firecrackers in the driveway near his apartment, when he saw Chris Hill and another man standing near a dumpster. Michael White, who lives with Deborah White and Don Juan, recognized the defendant because he is a neighbor. Michael White was in bed when he heard the shots. Sometime later at a photographic lineup, he selected the defendant's picture and named him as the man seen standing near the dumpster shortly before the shooting.

Kevin Edgar, who testified as a result of an immunity agreement, told the court he did not wish to testify because he was not at the scene of the crime. He explained that Chris Hill and Jeffery Hill told him of the offense after it happened. Edgar said both men were friends, but Jeffery Hill was a better friend because he had known him longer. The night of July 4th Jeffery Hill, Chris Hill and Edgar were out together when Chris Hill received a telephone call telling him his mother's apartment had been burglarized. The three men went to her apartment, saw the hole in the wall, and discussed what was missing. Then Chris Hill said to Jeffery Hill, "Let's go take a walk," and they left for about thirty minutes. They returned to Rose Hill's apartment and were preparing to leave when a woman came up to them and said, "I had nothing to do with it. The man on the first floor did it." Jeffery and Chris Hill left again, and Edgar, who had stayed in the apartment, heard gunshots. Jeffery and Chris Hill returned immediately, and Chris Hill said, "Let's go." They left in Chris Hill's car, and Edgar reported that, once they were in the car, Jeffery Hill said, "You heard him? You heard him? He said, 'Give me my gun.' And that when Jeff said he started shooting." Edgar

maintained that he did not see either man with a gun that night.  They drove to Jeffery Hill's house so that he could change his shirt, and then went to a nightclub.  At that point Edgar got someone to give him a ride home.  Kevin Edgar was arrested with the Hill cousins for this offense.  Edgar said he knew the gun used belong [sic] to Chris Hill.

Detective Roger Bateman, who investigated the murder, testified that when he arrived on the scene an emergency medical team was caring for the victim who was taken to Charity Hospital, where he died.  The detective spoke with several young people in the apartment and developed a suspect, Chris Hill.  The detective went to his apartment and spoke to his mother, Rose Hill.  After showing Rose Hill a search warrant, the apartment was searched.  In Chris Hill's bedroom, the detective found a black plastic Daewoo gun case and a glass jar containing .38 caliber ammunition.  During the search, Chris Hill entered the apartment, and Detective Bateman told him he was under investigation for a homicide.  After being advised of his rights, Hill gave a statement to the detective at the police station.  Hill's statement was played for the jury.  Under cross-examination, the detective said that Chris Hill has no prior convictions.  Through his investigation, the detective learned that Jeffery Hill used Chris Hill's gun to shoot Willie White as Chris Hill stood nearby.[28]

<u>Right to Testify</u>

Petitioner's first claim is that his rights were violated when the trial court refused to allow him to testify on his own behalf.  The Court notes that "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense." <u>Rock v. Arkansas</u>, 483 U.S. 44, 49 (1987).  However, the only proof petitioner offers with respect to this claim in no way supports a contention that he was denied that right.

In support of this claim, petitioner disingenuously quotes a brief exchange from the transcript in which the trial judge does in fact state that he does not want petitioner taking the stand.

---

[28]  <u>State v. Hill</u>, No. 2000-KA-0664, at pp. 1-4 (La. App. 4th Cir. Feb. 14, 2001) (unpublished); State Rec., Vol. III of VIII.

The state district court rejected petitioner's claim, holding: "Defendant has failed to attach a copy of the transcript of the alleged statement to determine the context, and therefore has failed to carry his burden of proof. La.C.Cr.P. Art. 930.2."[29] However, this Court has reviewed the transcript, and it is abundantly clear that the context is not at all what petitioner implies in his claim.

During the testimony of Michael White, the prosecution suddenly requested a recess. A bench conference was held off the record, the recess was then granted and defense counsel was allowed to confer with petitioner alone. When their conference concluded, the following transpired outside of the presence of the jury:

> MR. OLINDE [defense counsel]:
> Judge, I would like to put Mr. Chris Hill on the witness stand to, on the record, announce what has transpired.
>
> THE COURT:
> No. I don't want him on the witness stand.
>
> MR. OLINDE:
> Judge, I want to put on the record that I have spoken with my client, Mr. Hill, that we have advised him that the State has offered him an amendment to the charge to Accessory After the Fact. I have advised him that with that it would be a sentence of five years.
> I have advised him that he would be parole eligible in 20 months. He informs me he's already served 10 to 11 months, that he would be parole eligible in 9 months.
> It was my strong advice, based upon the evidence, that he accepts this offer by the State and he has chosen to act contrary to my advice in this regard.
> I've also discussed the case with Mr. Boshea, and Mr. Boshea was present when I had this conversation with Mr. Hill. Mr. Boshea's strong advice to Mr. Hill was that he also accept the five years, and he has chosen to act in contrary to Mr. Boshea's advice. Is that correct, Mr. Boshea?

---

[29] State Rec., Vol. III of VIII, Judgment dated October 16, 2002.

MR. BOSHEA:
     That's correct, your Honor.

THE COURT:
     Okay, Mr. Hill.  Do you understand everything your lawyer just said?

THE DEFENDANT:
     Yes.

THE COURT:
     You understand you are facing a life penalty on this charge?

THE DEFENDANT:
     Yes.[30]

When considered in context, it is clear that the judge's comment was in response to defense counsel's desire to protect himself by having petitioner state on the record that he was refusing counsel's advice to accept the offered plea bargain.  The judge's comment clearly was not meant or interpreted as a ruling that the court was denying petitioner an opportunity to take the stand to testify in his own defense in relation to the underlying criminal charge against him.

In that petitioner offers no other proof that the trial court at any time denied him the opportunity to testify, he has failed to meet his burden of proof with respect to this claim and the claim should be rejected.

<u>Procedurally Barred Claims</u>

Petitioner next argues that the trial court erred in (1) denying his motion for a new trial, (2) denying his motion to suppress evidence and his statement, (3) denying his motion for

---

[30]  State Rec., Vol. II of VIII, transcript of May 19-20, 1999, pp. 129-31.

admission of the victim's "rap sheet," and (4) denying petitioner a mistrial and the right to a proper

defense.  Petitioner first asserted those claims in his state post-conviction application.  The state

district court found that the claims were procedurally defaulted under La.C.Cr.P. 930.4 because they

were not raised on appeal.[31]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that

judgment,[32] and the Louisiana Supreme Court rejected the related writ application without assigning

reasons.[33]

Because the claims were procedurally defaulted in state court, the state argues that

the claims are similarly procedurally barred in this court.  Regarding procedural bars, the United

States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person
> in its custody may not be reviewed by a federal court if the last state
> court to consider that claim expressly relied on a state ground for
> denial of relief that is both independent of the merits of the federal
> claim and an adequate basis for the court's decision.  To satisfy the
> "independent" and "adequate" requirements, the dismissal must
> "clearly and expressly" indicate that it rests on state grounds which
> bar relief, and the bar must be strictly or regularly followed by state
> courts, and applied to the majority of similar claims.  This rule
> applies to state court judgments on both substantive and procedural
> grounds.  Where there has been one reasoned state judgment rejecting
> a federal claim, later unexplained orders upholding that judgment or
> rejecting the same claim are presumed to rest upon the same ground.

---

[31]  State Rec., Vol. III of VIII, Judgment dated October 16, 2002.

[32]  State v. Hill, No. 2002-K-2258 (La. App. 4th Cir. Dec. 20, 2002) (unpublished); State Rec., Vol. III of VIII.

[33]  State ex rel. Hill v. State, 882 So.2d 569 (La. 2004) (No. 2003-KH-2184); State Rec., Vol. III of VIII.  Although the record reflects that this writ application was actually related to the intermediate appellate court's denial in case 2003-K-1125, the Louisiana Supreme Court indicated that its decision was related to both cases 2003-K-1125 and 2002-K-2258.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).  "When the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

As previously noted, the state courts clearly rejected petitioner's claims because they were procedurally defaulted.  Because the state court invoked a state procedural rule obviously independent of the merits of any federal claims, this Court needs only to determine whether that rule was "adequate."  "The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise."  Hughes, 191 F.3d at 614.  In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule.  Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997).  Here, petitioner clearly has not met his burden, in that he makes no attempt whatsoever to establish that the procedural rule was not strictly or regularly followed.  Moreover, in any event, the procedural rule invoked, i.e. that a claim is deemed waived if not asserted on appeal, is an independent and adequate state procedural rule.  See Bell v. Cain, Civil Action No. 02-259, 2002 WL 31002831, at *4 (E.D. La. Aug. 29, 2002) (Africk, J.), *certificate of appealability denied*, No. 02-30947 (5th Cir. July 30, 2003); see also Gilkers v. Cain, Civil Action No. 05-841, 2006 WL 1985969, at *2 (E.D. La. May 30, 2006) (Duval, J.).[34]

---

[34]   The Court notes that petitioner argues that the state court failed to comply with La.C.Cr.P. art. 930.4(F) by finding his claims defaulted without first ordering him to state the reasons for his default.  Rec. Doc. 13, p. 2.  However, the provisions of article 930.4(F) are inapplicable where, as in the instant case, the petitioner uses the state uniform application for post-conviction relief.  State *ex rel.* Rice v. State, 749 So.2d 650 (La. 1999); see also Gilkers, 2006 WL 1985969, at *2.

Further, it is clear that petitioner has not demonstrated "cause and prejudice" for his default of the claims.  "To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted) (emphasis in original).

In the instant case, petitioner first argues that the claims were defaulted because he never had access to the court record.[35]  However, petitioner was represented by counsel on appeal, and there is no evidence that his counsel did not have access to the record.  Moreover, petitioner was present at trial and has not made any showing that he was unaware of any of the rulings he now seeks to challenge.  Therefore, even if the intermediate appellate court were inclined to grant him leave to file a supplemental *pro se* assignment of errors on direct appeal, he has made no showing that access to the court record was necessary to raise any of the proposed claims.

Second, petitioner argues that the claims were defaulted because his appellate counsel was ineffective.[36]  However, because petitioner did not argue in his state post-conviction applications that his appellate counsel was ineffective in that regard, and because he would now be barred from so arguing, see La.C.Crim.P. arts. 930.4(E) and 930.8, any such ineffective assistance of counsel claim would itself be procedurally defaulted.  A procedurally defaulted ineffective assistance of counsel claim may not serve as "cause" for a procedurally barred claim unless plaintiff shows "cause and prejudice" for the defaulted ineffective assistance of counsel claim.  See Edwards v. Carpenter, 529 U.S. 446 (2000).  Petitioner makes no attempt whatsoever to make that showing.

---

[35]  Rec. Doc. 13, p. 2.

[36]  Rec. Doc. 13, p. 3.

Because petitioner has failed to meet his burden to establish cause, it is unnecessary for the Court to consider whether prejudice resulted.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Petitioner likewise has not shown that the application of the procedural bar will result in a fundamental miscarriage of justice in this case.  In order to establish a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). The United States Fifth Circuit Court of Appeals has held:

> To demonstrate actual innocence, it is necessary that the petitioner show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt ... in light of all of the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongfully excluded or to have become available only after trial.

Lucas v. Johnson, 132 F.3d 1069, 1077 (5th Cir. 1998) (quotation marks and citations omitted). Applying that standard, and considering the overwhelming evidence of petitioner's guilt in this case, the Court finds that petitioner has not made a persuasive showing that he is actually innocent of the charge against him.  Therefore, he cannot demonstrate that any miscarriage of justice will result from application of the procedural bar.  Accordingly, the state is correct in arguing that petitioner's claims are procedurally barred in this federal proceeding.

<u>Cumulative Error</u>

Petitioner argues that the cumulation of errors committed during the proceeding rendered his trial fundamentally unfair.  The United States Fifth Circuit Court of Appeals initially expressed its disfavor of such claims in federal *habeas corpus* proceedings.  For example, in one case, the Fifth Circuit noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do.  Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law.  28 U.S.C. § 2254.  [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit.  We receive enough meritless habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.

<u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987).  That said, the Fifth Circuit nevertheless subsequently recognized such claims, albeit in a strictly narrow set of circumstances.  The Fifth Circuit has noted:

> In <u>Derden v. McNeel</u>, 978 F.2d 1453, 1454 (5th Cir. 1992), <u>cert. denied</u>, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where *"(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'"* <u>Id</u>., quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.  <u>Derden</u>, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5ᵗʰ Cir. 1996) (emphasis added); see also Jackson v. Johnson, 194 F.3d 641, 655 (5ᵗʰ Cir. 1999) ("The cumulative error doctrine provides relief only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness.").

For the reasons set forth in this opinion, the individual claims asserted by petitioner were procedurally defaulted or have no merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when, as here, the cumulative effect of the alleged errors cannot be said to have fatally infected the fundamental fairness of the trial.

Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  When petitioner asserted this claim in his state post conviction proceedings, the state district court rejected the claim as "not supported by the record."[37]  The Louisiana Fourth Circuit Court of Appeal found "no error" in that judgment,[38] and the Louisiana Supreme Court rejected the related writ application without assigning reasons.[39]

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner

---

[37]  State Rec., Vol. III of VIII, Judgment dated October 16, 2002.

[38]  State v. Hill, No. 2002-K-2258 (La. App. 4ᵗʰ Cir. Dec. 20, 2002) (unpublished); State Rec., Vol. III of VIII.

[39]  State ex rel. Hill v. State, 882 So.2d 569 (La. 2004) (No. 2003-KH-2184); State Rec., Vol. III of VIII.

seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  See id. at 697.

      To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

      In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner claims that his counsel was ineffective in several respects.  The Court will consider each of his contentions.

Petitioner first claims that counsel was ineffective in failing to put on the record the full details of the plea bargain offered by the state.  As noted previously in this opinion, petitioner rejected that plea bargain.  Therefore, counsel was not required to put the full details on the record, and petitioner has suffered no prejudice from the failure to do so.

Second, petitioner claims that counsel was ineffective in failing to hold the state to its burden of proof.  However, as noted *infra* with respect to petitioner's claim challenging the sufficiency of the evidence, the state in fact met its burden of proof and the state's evidence was

more than sufficient to support the resulting conviction.  Accordingly, petitioner's contention that the state was not held to its burden of proof is meritless.

Third, petitioner claims that counsel was ineffective in failing to file a motion for a mistrial or new trial based on the court's alleged refusal to allow petitioner to take the stand in his own defense.  As noted previously in this opinion, petitioner is mischaracterizing the judge's action. Because petitioner has not shown that the trial judge in fact refused to allow petitioner to testify in his own defense, this related ineffective assistance of counsel claim necessarily fails.

Fourth, petitioner claims that counsel was ineffective in failing to "investigate possible defenses."[40]  He further contends that counsel was ineffective in failing to subpoena witnesses, visit the crime scene, or interview Sandra Lockhart and Lawrance Ward.

To the extent that petitioner is contending that counsel failed to perform an adequate investigation of the crime scene and possible defenses, his claim falls woefully short.  A petitioner asserting a claim for inadequate investigation bears the burden to provide factual support for his allegations as to what further investigation would have revealed.  Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).  Petitioner has provided no indication that exculpatory evidence existed at the crime scene or that any possible defense was available which additional investigation would have uncovered.  Sometimes, as is evidently the case here, when representing an obviously guilty client, counsel's only choice is to vigorously test the state's case and argue to the jury that the state has failed to carry its burden of proving that the accused is guilty beyond a reasonable doubt.  Simply because counsel was unable to fashion a nonexistent defense out of whole cloth does not mean that

---

[40]  Rec. Doc. 2, supporting memorandum, p. 23.

he performed deficiently.  Moreover, in light of the overwhelming evidence presented at trial establishing his guilt, this Court has no hesitation in finding that petitioner was not prejudiced by any failure of counsel to perform a more thorough investigation in the instant case.

        To the extent that petitioner is contending that counsel should have interviewed other witnesses and called them to testify, his claim is similarly deficient.  "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative."  Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)).  To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'"  Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)).  In the instant case, petitioner has not identified any additional defense witnesses who could have been uncovered through additional investigation or even shown that such witnesses exist.  Petitioner has not provided affidavits from such persons or any other corroboration that they would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that they would have testified at trial at all.  Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to interview or call the proposed witnesses to testify.

        Lastly, to the extent that petitioner is claiming that counsel should have interviewed Sandra Lockhart and Lawrance Ward, witnesses who allegedly provided the prosecution with background information but who were not called at trial, his claim is likewise meritless.  First,

petitioner has provided no evidence, such as affidavits from either counsel or those witnesses, to establish that the witnesses were not in fact interviewed by counsel.  Second, even if the Court were to assume that the witnesses were not interviewed, petitioner has failed to show he was prejudiced as a result.  Petitioner alleges that Lockhart knew who burglarized the residence of petitioner's mother and was in the area when Williams was shot.  However, petitioner fails to identify how either piece of information was in any way exculpatory or would have aided the defense.  Regarding Ward, petitioner alleges that Ward "had knowledge of information from three or four people that said that they had knowledge who the real shooter was, and who knew the shooter ...."[41]  However, petitioner has never produced any evidence, such as an affidavit from Ward, that he in fact had such knowledge.  Moreover, petitioner does not even allege that Ward's purported knowledge pointed to anyone other than Jeffery Hill as the "real shooter," as the evidence at trial, *including petitioner's own statement*, showed.[42]  Therefore, petitioner has not shown that any exculpatory information could have been gleaned from an interview of Lockhart and Ward.  Accordingly, he has failed to meet his burden to prove that there is a reasonable probability that the result of the proceeding would have been different if counsel had interviewed those witnesses.

Accordingly, petitioner has failed to demonstrate that the state court's decision denying his ineffective assistance of counsel claims was contrary to, or involved an unreasonable

---

[41]  Rec. Doc. 2, supporting memorandum, p. 23.

[42]  In fact, petitioner seems to contend that Ward alleged that petitioner was the "real shooter." Rec. Doc. 13, p. 4.  If so, any information Ward purportedly had would appear to be inculpatory rather than exculpatory, and it is therefore difficult to imagine how petitioner's defense would have been aided by any such information.

application of, clearly established Federal law, as determined by the Supreme Court of the United

States.  Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

Sufficiency of the Evidence

Petitioner claims that there was insufficient evidence to support his conviction.  The

United States Fifth Circuit Court of Appeals has noted that claims of insufficient evidence are to be

analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979):

> In considering challenges to the sufficiency of evidence in
> habeas proceedings, "the relevant question is whether, after viewing
> the evidence in the light most favorable to the prosecution, any
> rational trier of fact could have found the essential elements of the
> crime beyond a reasonable doubt."

Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Jackson, 443 U.S. at 319).  This

Court may find the evidence sufficient even though the facts additionally support one or more

reasonable hypotheses which are consistent with petitioner's claim of innocence.  Foy v. Donnelly,

959 F.2d 1307, 1316 (5th Cir. 1992); see also Gibson v. Collins, 947 F.2d 780, 783 (5th Cir. 1991).

"The Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence

determination, but rather whether it made a rational decision to convict or acquit.'"  Santellan, 271

F.3d at 193 (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A sufficiency of the evidence argument presents a mixed question of law and fact.

Taylor v. Day, Civil Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213

F.3d 639 (5th Cir. 2000).  Therefore, this Court must defer to the state court unless its decision

regarding the claim "was contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected petitioner's challenge to the sufficiency of the evidence, holding:

> In a single assignment of error, the defendant argues that the evidence was insufficient to prove that he had the specific intent to kill the victim.
>
> In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781 (1979); State v. Green, 588 So.2d 757 (La. App. 4th Cir. 1991). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole, because that is what a rational trier of fact would do. State v. Mussall, 523 So.2d 1305 (La. 1988). However, the determination of credibility is a question of fact within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938 (La. 1984).
>
> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common practice. State v. Shapiro, 431 So.2d 372 (La. 1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, but is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La. 1987).
>
> The defendant was charged with second-degree murder of Willie White. Because he was not accused of any of the offenses listed in the second-degree murder statute, the State charged the defendant under Par. A(1) of that statute, in which the offender "has a specific intent to kill or commit great bodily harm." La. R.S. 14:30.1. The jury concluded that the homicide was committed in sudden passion and thus returned a verdict of manslaughter. The State's proof therefore must support a finding of specific intent to kill or commit great bodily harm. La. R.S. 14:31A(1).

- 26 -

La. R.S. 14:24 defines "principals" as:   "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime...."   See State v. Brooks, 505 So.2d 714 (La. 1987), certiorari denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337 (1987); State v. Watson, 529 So.2d 94 (La. App. 4 Cir. 1988), writ denied 535 So.2d 740 (La. 1989).  However, to support a defendant's conviction as a principal, the State must show that the defendant had the requisite mental state for the crime. Brooks, *supra*; State v. Spotville, 583 So.2d 602 (La. App. 4 Cir. 1991), writ denied 585 So.2d 577 (La. 1991).

Specific criminal intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act."  La. R.S. 14:10(1).  Specific criminal intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant.  State v. Maxie, 93-2158 (La. 4/10/95), 653 So.2d 526, 532.

In recent cases, the driver of the getaway car has been found to be a principal to the felony another committed.  In State v. Bellamy, 599 So.2d 326 (La. App. 2 Cir. 1992), writ denied, 605 So.2d 1089 (La. 1992), the defendant made a statement wherein he admitted to being with the robbers for several hours before the offense, during the offense, and fleeing the scene with them, but maintained his innocence by denying that he knew the men were going to commit a robbery.  The Second Circuit found that the jury could reject the defendant's argument that he was unaware that a robbery was going to be committed, and affirmed his conviction.

In State v. Bowman, 95-0667 (La. App. 4 Cir. 7/10/96), 677 So.2d 1094, writ denied, 96-2070 (La. 1/31/97), 687 So.2d 400, the defendant and his partner were both indicted for second degree murder.  Bowman was driving and his partner, who was next to him in the front seat, was arguing with a man in another car.  Bowman turned the car around and stopped next to the victim's car, and his partner began shooting.  This Court held that the defendant intended to take part in frightening the victim, and he was a principal in the commission of the crime.

Similarly, in the instant case, the defendant made a statement in which he admitted that he and Jeffery Hill went looking for the person who burglarized his apartment; moreover, either Chris or Jeffery Hill was carrying Chris's gun.  When they arrived at the

victim's apartment, Jeffery Hill used the gun to shoot the victim. Chris Hill was standing on the walkway outside the door of the apartment.  When he saw Kevin Edgar after the shooting, Chris Hill told Edgar not to worry because "[y]ou ain't do [sic] nothing.  You wasn't with us."  Afterward Chris Hill drove to Old Gentilly Road and threw his gun away.  Although Chris Hill may not have intended to kill the victim, a jury could reasonably infer from these circumstances that he intended to inflict at least great bodily harm.
       This assignment is thus without merit.[43]

       In the instant case, the state court identified the proper standard, i.e. the <u>Jackson</u> standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's deferential standard, this Court rejects petitioner's claim challenging the sufficiency of the evidence.

**<u>RECOMMENDATION</u>**

       Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Chris Hill be **DISMISSED WITH PREJUDICE**.

       A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

   [43] <u>State v. Hill</u>, No. 2000-KA-0664, at pp. 4-7; State Rec., Vol. III of VIII.

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this first day of December, 2006.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**